## SYLVESTER KIPP v. CATHERINE HAGAN.[1]

July 9, 1909.

Nos. 16,207—(141).

**Adverse Possession.**

The entry into actual possession of land by the holder of the legal title, or person claiming under him, before the expiration of the statutory period for acquiring title by adverse possession, arrests the running of the statute.

**Not Error to Direct Verdict.**

Evidence *held* insufficient to take to the jury the question of defendant's alleged title by adverse possession, and that the court rightly directed a verdict for plaintiff.

Action in ejectment in the district court for Sherburne county. The case was tried before Giddings, J., who directed a verdict in favor of plaintiff. From an order denying defendant's motion for a new trial, she appealed. Affirmed.

*S. R. Child* and *Benj. Drake,* for appellant.

*P. J. McLaughlin,* for respondent.

BROWN, J.

Action in ejectment, in which, at the conclusion of the trial, a verdict was directed for plaintiff, and defendant appealed from an order denying a new trial.

[1] Reported in 122 N. W. 317.

1. The evidence sufficiently showed the legal title to the property in plaintiff, and consequently the right of possession, and a verdict was properly directed in his favor, unless the defendant's claim of title by fifteen years' adverse possession was supported by sufficient competent evidence to require the submission of the question to the jury. Plaintiff claimed title through the original patentee, Hannah Kusick, and to prove it offered in evidence deeds from the heirs of Hannah, signed under the name of McKusic. The evidence fully explains the variance in the names. A daughter of the patentee testified that the family was known by and used both names. Deeds by the heirs, sons and daughter, purported to convey the land to plaintiff's predecessor in title as heirs at law of the patentee, Hannah Kusick, deceased.

2. The facts in reference to defendant's adverse possession are as follows: Defendant and William Hagan, her husband, owned and resided upon a tract of land adjoining the land in controversy, and in 1891 claim to have taken possession of this land, and thereafter continued in the open, exclusive, and notorious occupancy thereof until the death of William in 1907, since which time the defendant has continued the exercise of acts of ownership and possession. Neither defendant nor her husband ever resided upon this land, but upon their own, the adjoining tract, though the evidence tends to show that they cropped a few acres of it, cut hay from other parts, and used a portion thereof for pasture purposes. It is claimed that this situation continued down to the time of the commencement of this action, a period of over fifteen years, and that, though the original occupancy of the land was by William Hagan, defendant's husband, she continued it after his death, and is entitled to the benefit of the preceding acts of ownership by him. The Hagans had a daughter, an only child, named Anna, who about 1891 married a man named Kight, by whom she had a son. She subsequently married a man named Zimmerman, by whom she had children. At the time of the trial of this action she was the wife of one Chubb. Between 1891 and 1904 the daughter's children resided with their grandparents on their home farm, and the daughter made her home with them at intervals, frequently remaining for months at a time. In 1895, the daughter, then Mrs. Zimmerman, entered into a contract for the

purchase of the land in controversy from the then owners, upon the consummation of which she took possession thereof and made certain improvements, namely, the construction of a fence, and grubbing and breaking about five acres thereof. During the time of her possession under the contract she paid the taxes assessed against the land for the years 1887 to 1897, to the amount of $114.

Plaintiff and Orrin Kipp became the owners of the land in 1901, and they brought an action to quiet title to the same against Mrs. Zimmerman, who held under the contract just mentioned, and others claiming or appearing to claim some estate or interest therein. Mrs. Zimmerman answered, setting up, first, a claim of ownership under her contract with the former owners; and, second, a claim for permanent improvements made to the land while occupying under the contract of the value of $250. That cause was duly brought to trial, and the court found as facts therein that Mrs. Zimmerman entered into the possession of the land in 1895 under the contract of purchase, and ever thereafter, by herself, employees, or members of her family, remained in the exclusive occupancy thereof. But she was found in default in her payments and the contract was canceled. Defendant in this action, mother of Mrs. Zimmerman, and with whom the latter and children made their home, was a witness on the trial of that action on behalf of her daughter, and testified that she knew of the improvements for which Mrs. Zimmerman made claim, that they were made by Mrs. Zimmerman, and were worth $52. Judgment was ordered and entered, quieting Kipp's title, subject to the claim of Mrs. Zimmerman for improvements made and taxes paid, amounting in all to $336.45. This was paid, and the judgment satisfied.

Thereafter defendant, claiming under the alleged continuous possession of herself and husband, asserted ownership of the land, took actual possession thereof, and plaintiff, having become the sole owner of the legal title, brought this action to recover its possession. As already stated, defendant claimed in defense title by adverse possession. At the conclusion of the trial, plaintiff requested an instructed verdict on two grounds: (1) That the defendant's evidence failed to show that she had been in the continuous, actual, and adverse possession for the period required by law; and (2) that de-

fendant, by her appearance as a witness in the trial of the Zimmerman action in support of the latter's claim to improvements, upon which plaintiff relied in paying the judgment rendered in that action, estopped herself from now claiming adverse possession during the period of Mrs. Zimmerman's occupancy. The court granted the motion, but without stating upon which ground.

Our conclusion, after a somewhat careful examination of the record, is that a verdict was properly directed for plaintiff on the first stated ground, in view of which we do not consider the merits of the second. In our opinion, the evidence, taken as a whole, with its side lights, will not justify a verdict in defendant's favor, and the court rightly disposed of the case by directing a verdict for plaintiff. There was no such adverse possession and occupancy shown as would warrant the legal conclusion of title by lapse of time. It wholly fails to show a possession in either of the Hagans for the statutory period of fifteen years. They both knew that the land belonged to others in fact, and their original entry was a trespass. They paid no taxes, and the record falls short of showing an exclusive, continuous possession, but does show to the contrary. Both apparently recognized the rights of Mrs. Zimmerman, and defendant appeared in court and gave evidence in support of those rights, which arose during the period covered by the possession now asserted by her. If it be conceded that the Hagans entered into possession of the land in 1891, as now claimed, it is quite clear that the possession so taken was interrupted by the appearance of Mrs. Zimmerman. 1 Cyc. 1009, and cases cited. She entered into a contract for its purchase in 1895, made improvements thereon, and claimed, and the court in the other action found that she thereafter, for a number of years, by herself or members of her family, retained possession and control of the same. She was at this time residing with her mother, defendant herein, and it would be a severe strain, in view of the relation existing between the parties and the situation of the property, adjoining that of defendant, to hold that the latter during this same period was occupying and in possession of the land adverse to the claims of the daughter. The only legitimate inference from the circumstances disclosed is either that defendant never intended to claim the exclusive right to the land, or, if she did, that she and her husband

surrendered the same to the daughter at the time she contracted to purchase it. The evidence and circumstances disclosed by the record point irresistibly to the latter conclusion. At any rate, the entry by Mrs. Zimmerman, under the circumstances stated, arrested the running of the statute in favor of the Hagans. Hood v. Hood, 25 Pa. St. 417; Brickett v. Spofford, 14 Gray (Mass.) 514; 1 Cyc. 1009.

We have examined all of defendant's assignments of error, challenging rulings on the admission and exclusion of evidence, and discover no substantial error. The exclusion of the testimony of Mrs. Nichols, to the effect that Mrs. Hagan said to her in 1891 that she (Mrs. Hagan) owned this land, was not reversible error. Confessedly, Mrs. Hagan did not own the land at that time, nor had she then any claim of right, possessory or otherwise. And though in cases of this kind declarations of title by one in adverse possession of land may be admissible as characterizing the possession, on the whole record in this case the ruling of the court was not prejudicial. The possession taken by the Hagans in 1891 was broken and interrupted in 1895, and no rights have accrued since that time. The judgment roll in the Zimmerman action was properly received in evidence, not as concluding defendant, for she was not a party to that action, but as tending to controvert the claim of continuous possession by her. Her relations with Mrs. Zimmerman, her knowledge of the pendency of the action, and that her daughter had contracted to buy the land in 1895, and that she was claiming title to the land in defense of that action, made the record therein admissible as an element tending to defeat defendant's asserted exclusive occupancy.

Order affirmed.